BK 33580 PG168 #5619
04-20-2017 @ 10:01a

Exhibit B



After Recording Return To:
Prepared By:
**Liberty Home Equity Solutions, Inc.**
**10951 White Rock Road, Suite 200**
**Rancho Cordova, CA 95670**
Prepared By:
**Liberty Home Equity Solutions, Inc.**
**10951 White Rock Road, Suite 200**
**Rancho Cordova, CA 95670**

_____
Space Above This Line For Recording Data

**State of Maine**                                                   FHA Case Number:
                                                                      Loan Number
                                                                     MIN:

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **April 14, 2017** ("Date"). The mortgagor is **Leonard J. Cote** and **Rachel M. Cote** whose address is **25 EIGHTH ST, AUBURN, ME 04210-5623** ("Borrower"). The term Borrower does not include the Borrower's successors and assigns. **The mortgagee under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ('MERS'). MERS is a separate corporation that is acting solely as nominee for Lender, and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.              FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.** This Security Instrument is given to **Liberty Home Equity Solutions, Inc.** which is organized and existing under the laws of **THE STATE OF CALIFORNIA**, and whose address is **10951 White Rock Road, Suite 200, Rancho Cordova, CA 95670** ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances made on the Borrower's behalf, under the terms of a Home Equity Conversion Mortgage Adjustable Rate Loan Agreement ("Loan Agreement") dated the same date as this Security Instrument. The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **TWO HUNDRED SEVENTY ONE THOUSAND FIVE HUNDRED AND NO/100** Dollars (U.S. **$271,500.00**); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note and Loan Agreement. The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on

RMC

Mortgage Cadence Document Center © 0220 12/16         1 of 15         Maine Mortgage HECM ADJUSTABLE RATE - MERS

**April 25, 2090**. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in **Androscoggin** County, Maine:

**Legal description attached hereto as Exhibit A and by this reference made a part hereof.**

which has the address of:  **25 EIGHTH ST, AUBURN, ME 04210-5623** ("Property Address").

TO HAVE AND TO HOLD this Property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform Security Instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2.  **Payment of Property Charges.** Borrower shall pay all property charges consisting of property taxes, hazard insurance premiums, flood insurance premiums, ground rents, condominium fees, planned unit development fees, homeowner's association fees, and any other special assessments that may be required by local or state law in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges as provided for in and in accordance with the Loan Agreement.

3.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including but not limited to fire and flood, for which Lender requires insurance. Such insurance shall be maintained in the amounts and for the periods that Lender requires; Lender has

the discretion to increase or decrease the amount of any insurance required at any time provided the amount is equal to or greater than any minimum required by the Secretary of Housing and Urban Development ("Secretary"). Whether or not Lender imposes a flood insurance requirement, Borrower shall at a minimum insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. If the Lender imposes insurance requirements, all insurance shall be carried with companies approved by Lender, and the insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument (as described in Paragraph 15) held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's Principal Residence for the term of the Security Instrument.

   Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal Residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property**. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request

Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 14(c).

If Borrower fails to make these payments or pay the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender or MERS may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of property taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument (as described in Paragraph 15) held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Non-Borrowing Spouse.** Borrower **N/A** is married under the laws of **N/A** to **N/A** ("Non-Borrowing Spouse"), who is not a Borrower under the terms of the Note, Loan Agreement or this Security Instrument.

   (a) <u>Eligible Non-Borrowing Spouse.</u> A Non-Borrowing Spouse identified by the Borrower who meets, and continues to meet, the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for

the Deferral Period.

(b) <u>Ineligible Non-Borrowing Spouse.</u> A Non-Borrowing Spouse who does not meet the Qualifying Attributes requirements established by the Secretary that the Non-Borrowing Spouse must satisfy in order to be eligible for the Deferral Period.

10. **Grounds for Acceleration of Debt.**

   (a) **Due and Payable - Death.**

   (i) Except as provided in Paragraph 10(a)(ii), Lender may require immediate payment in full of all sums secured by this Security Instrument if a Borrower dies and the Property is not the Principal Residence of at least one surviving Borrower.

   (ii) Lender shall defer the due and payable requirement under Paragraph 10(a)(i) above for any period of time ("Deferral Period") in which a Non-Borrowing Spouse identified in Paragraph 9 qualifies as an Eligible Non-Borrowing Spouse and certifies all of the following conditions are, and continue to be, met:

   a. Such Eligible Non-Borrowing Spouse remained the spouse of the identified Borrower for the duration of such Borrower's lifetime;
   b. Such Eligible Non-Borrowing Spouse has occupied, and continues to occupy, the Property as his or her Principal Residence;
   c. Such Eligible Non-Borrowing Spouse has established legal ownership or other ongoing legal right to remain in the Property;
   d. All other obligations of the Borrower under the Note, the Loan Agreement and this Security Instrument continue to be satisfied; and
   e. The Note is not eligible to be called due and payable for any other reason.

   This sub-paragraph (ii) is inapplicable or null and void if an Eligible Non-Borrowing Spouse is or becomes an Ineligible Non-Borrowing Spouse at any time. Further, during a deferral of the due and payable status, should any of the conditions for deferral cease to be met such a deferral shall immediately cease and the Note will become immediately due and payable in accordance with the provisions of Paragraph 7(a)(i) of the Note.

   (b) **Due and Payable - Sale.** Lender may require immediate payment in full of all sums secured by this Security Instrument if all of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property). A deferral of due

and payable status is not permitted when a Lender requires immediate payment in full under this Paragraph.

(c) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

   (i) Property ceases to be the Principal Residence of a Borrower for reasons other than death and the Property is not the Principal Residence of at least one other Borrower; or

   (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the Principal Residence of at least one other Borrower; or

   (iii) An obligation of the Borrower under this Security Instrument is not performed.

A deferral of due and payable status is not permitted when a Lender requires immediate payment in full under Paragraph 10(c).

(d) **Notice and Certification to Lender.** Borrower shall complete and provide to the Lender on an annual basis a certification, in a form prescribed by the Lender, stating whether the Property remains the Borrower's Principal Residence and, if applicable, the Principal Residence of his or her Non-Borrowing Spouse. Where a Borrower has identified a Non-Borrowing Spouse in Paragraph 9 and the identified Non-Borrowing Spouse qualifies as an Eligible Non-Borrowing Spouse, the Borrower shall also complete and provide to the Lender on an annual basis an Eligible Non-Borrowing Spouse certification, in a form prescribed by the Lender, certifying that all requirements for the application of a Deferral Period continue to apply and continue to be met. During a Deferral Period, the annual Principal Residence certification must continue to be completed and provided to the Lender by the Eligible Non-Borrowing Spouse. The Borrower shall also notify Lender whenever any of the events listed in this Paragraph 10 (b) and (c) occur.

(e) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 10(b) and (c). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

   (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

   (ii) Pay the balance in full; or

   (iii) Sell the Property for the lesser of the balance or ninety-five percent (95%) of the appraised value and apply the net proceeds of the sale toward the balance; or

        (iv)    Provide the Lender with a deed-in-lieu of foreclosure.

    (f)    **Notice to Secretary and Eligible Non-Borrowing Spouse.** Lender shall notify the Secretary and any Eligible Non-Borrowing Spouse whenever any event listed in Paragraph 10(b) and (c) occurs during a Deferral Period.

    (g)    **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 10. A trust shall not be considered an occupant or be considered as having a Principal Residence for purposes of this Paragraph 10.

    (h)    **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

11.    **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

12.    **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the Principal Balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

13.    **Deferral Period Reinstatement.** If a Deferral Period ceases or becomes unavailable because a Non-Borrowing Spouse no longer satisfies the Qualifying Attributes for a Deferral Period and has

become an Ineligible Non-Borrowing Spouse, neither the Deferral Period nor the Security Instrument may be reinstated. In the event a Deferral Period ceases because an obligation of the Note, the Loan Agreement or this Security Instrument has not been met or the Note has become eligible to be called due and payable and is in default for a reason other than death, an Eligible Non-Borrowing Spouse may have a Deferral Period and this Security Instrument reinstated provided that the condition which resulted in the Deferral Period ceasing is corrected within thirty (30) days. A Lender may require the Eligible Non-Borrowing Spouse to pay for foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding, such costs may not be added to the Principal Balance. Upon reinstatement by an Eligible Non-Borrowing Spouse, the Deferral Period and this Security Instrument and the obligations that it secures shall remain in effect as if the Deferral Period had not ceased and the Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement of either the Deferral Period or this Security Instrument within the past two (2) years immediately preceding the current notification to the Eligible Non-Borrowing Spouse that the mortgage is due and payable; (ii) reinstatement of either the Deferral Period or this Security Instrument will preclude foreclosure in the future; or (iii) reinstatement of either the Deferral Period or Security Instrument will adversely affect the priority of the Security Instrument.

14. **Lien Status.**

    (a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 14(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 15(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

    (b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

    (c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to

prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one more of the actions set forth above within ten (10) days of the giving of notice.

15. **Relationship to Second Security Instrument.**

    (a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

    (b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

    (i) This Security Instrument is assigned to the Secretary; or

    (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

    If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

    (c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

    (i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 23 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

    (ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the Principal Balance under the Note.

    (d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 15.

16. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

17. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

    Notwithstanding anything to the contrary herein, upon the death of the last surviving Borrower, the Borrower's successors and assigns will be bound to perform Borrower's obligations under this Security Instrument.

18. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice to a Non-Borrowing Spouse provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower, Lender, or Non-Borrowing Spouse when given as provided in this Paragraph 18.

19. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

20. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

21. **Third-Party Beneficiary.** Except as set forth in Paragraph 10(a)(ii) and only for an Eligible Non-Borrowing Spouse, this Mortgage does not and is not intended to confer any rights or remedies upon any person other than the parties. Borrower agrees that it is not a third-party beneficiary to the Contract of Insurance between HUD and Lender.

22. **Capitalized Terms.** Capitalized terms not defined in this Security Instrument shall have the meanings ascribed to them in the Loan Agreement.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

23. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

    If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

    Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 23.

    Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

24. **Foreclosure Procedure.** If Lender requires immediate payment-in-full under Paragraph 10, Lender may bring a lawsuit to take away all of Borrower's remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale". In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

    Lender may require immediate payment in full under this Paragraph 24 only if all of the following conditions are met:
    (a) Borrower fails to keep any promise or agreement made in this Security Instrument, including the promise to pay when due the sums secured.
    (b) Lender sends to Borrower, in the manner described in Paragraph 18 above, a notice that states:
        (i) The promise or agreement that Borrower failed to keep;
        (ii) The action that Borrower must take to correct that default;
        (iii) A date by which Borrower must correct the default. That date must be at least thirty (30) days from the date on which the notice is given;
        (iv) That if Borrower does not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;

  (v) That if Borrower meets the conditions stated in Paragraph 24 below, Borrower will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

  (vi) The borrower has the right in any lawsuit for foreclosure and sale to argue that Borrower has kept Borrower's promises and agreements under the Note and under the Security Instrument, and to present any other defenses that Borrower may have.

 (c) Borrower does not correct the default stated in the notice from Lender by the date stated in that notice.

25. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in Paragraph 18. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

26. **Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **4.549**% which accrues on the Principal Balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding Principal Balance. Each adjustment to the interest rate will be based upon the interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published on the first business day of each week in the "Money Rates" section of *The Wall Street Journal*("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any Index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **May, 2018**, and on **[X]** that day of each succeeding year **[ ]** the first day of each succeeding month ("Change Date") until the loan is paid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current

Index will be called the ("Calculated Interest Rate") for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date ("the Existing Interest Rate").

**[X] Annually Adjusting Variable Rate Feature** The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

**[ ] Monthly Adjusting Variable Rate Feature** The Calculated Interest Rate will never increase above **N/A** Percent (**N/A %**)

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

27. **Discontinuance of Lender's Enforcement of Security Instrument.** If Lender requires immediate payment in full, Borrower may have the right to have enforcement of this Security Instrument discontinued. Borrower will have the right at any time before a judgment has been entered enforcing this Security Instrument if Borrower meets the following conditions:
    (a) Borrower pays the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
    (b) Borrower corrects the failure to keep any other promises or agreements made in this Security Instrument; and
    (c) Borrower pays all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees and;
    (d) Borrower does whatever Lender reasonably requires to assure Lender's rights in the Property, Lender's rights under this Security Instrument, and Borrower's obligations under this Note and this Security Instrument continue unchanged.
    If Borrower fulfills all of the conditions in this Paragraph 27 then the Note and this Security Instrument will remain in affect as if immediate payment in full had never been required.

28. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of the loan closing).

29. **Payment During Foreclosure.** Borrower agrees that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by Borrower, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Paragraph 24 above. Lender may use such monies to pay off any part of the sums secured without affecting Lender's right to continue foreclosure and sale.

30. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

    [ ] Condominium Rider              [ ] Planned Unit Development Rider
    [ ] Shared Appreciation Rider      [ ] Other [Specify]

31. **Nominee Capacity of MERS.** MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Mortgage. Subject to the foregoing, all references herein to "Mortgagee" shall include Lender and its successors and assigns.

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)    _____ (Seal)
Borrower - **Leonard J. Cote**        Borrower - **Rachel M. Cote**

_____ Space Below This Line For Acknowledgment _____

State of Maine )
County Androscoggin

The foregoing instrument was acknowledged before me on April 14, 2017
by Leonard J. Cote and Rachel M. Cote

_____
(Signature of person taking acknowledgment)

_____
(Title or rank)

My commission expires: _____

Origination Company: **Acadia Lending Group LLC**
   NMLSR ID: **370636**
Originator: **Rose, John A.**
   NMLSR ID: **370542**
Lender: **Liberty Home Equity Solutions, Inc.**
   NMLSR ID: **3313**

[Notary seal: THERESA M. DOLAN, STATE OF MAINE, MY COMMISSION EXPIRES JANUARY 6, 2021, NOTARY PUBLIC]

Mortgage Cadence Document Center © 0220 12/16        15 of 15        Maine Mortgage HECM ADJUSTABLE RATE - MERS

EXHIBIT A

COTE

The land with the buildings thereon situated in Auburn, County of Androscoggin, State of Maine, bounded and described as follows:

Being lots numbered one (1), two (2) and three (3), in Block E-47, as shown on Plan of House lots made by John Collins April 1, 1933, and recorded in the Androscoggin County Registry of Deeds, Book of Plans, Vol. 2, Page 266, to which plan and its record reference may be had for a more particular description of the premises herein conveyed.

ANDROSCOGGIN COUNTY
TINA M CHOUINARD
REGISTER OF DEEDS